UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LAWRENCE VIRGIL WAGNER,
#360662,

    Petitioner,                                              Civil Action No. 18-CV-10044

vs.                                                        HON. BERNARD A. FRIEDMAN

ERICA HUSS,

    Respondent.
_____/

**OPINION AND ORDER DENYING PETITIONER'S APPLICATION FOR A WRIT OF HABEAS CORPUS, DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, AND GRANTING LEAVE TO APPEAL IN FORMA PAUPERIS**

Petitioner in this matter seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his pro se application, petitioner challenges his conviction for bribing, intimidating or interfering with a witness, Mich. Comp. Laws § 750.122(7)(a), and being a fourth felony habitual offender, Mich. Comp. Laws § 769.12. For the reasons stated below, the Court shall deny the petition.

**I. Background**

Lutora Carlisle is the mother of Bianca Burston, who witnessed a friend's murder. Carlisle testified that at about 1:30 p.m. on December 10, 2012, she heard a knock at her front door. Carlisle looked out the window next to the front door to see who was knocking and saw petitioner, whom she identified at trial. Petitioner asked Carlisle if Burston as at home. Carlisle told petitioner that he had the wrong house. (Tr. 4/23/13, pp. 4-7; ECF No. 8-4, PageID.339-42). Petitioner warned, "[Y]es, right. Tell her she better not come the court [sic]. She better not talk." (*Id*., p. 7; ECF No. 8-4, PageID.342). Carlisle testified that her daughter was a witness

to her friend's murder and indicated that the preliminary examination where her daughter was supposed to testify was scheduled for the next day. (*Id*., pp. 7, 10-11; ECF No. 8-4, PageID.342, 345-46). Carlisle later went to the 36th District Court in Detroit with Burston for the preliminary examination in the murder case. Carlisle saw petitioner in a hallway and identified him as the man who threatened her daughter at Carlisle's house. Petitioner was then arrested. (*Id*., pp. 11-12; ECF No. 8-4, PageID.346-47).

Burston testified that she was a witness to a murder and that petitioner is the defendant's brother. (*Id*., p. 27; ECF No. 8-4, PageID.362). Burston testified that she was afraid to testify at the preliminary examination in the murder case because of petitioner's threats and did not appear in court until the police escorted her to the courthouse. (*Id*., pp. 29-30; ECF No. 8-4, PageID.364-65).

Petitioner presented an alibi at trial. Keiva Madison testified that she was petitioner's parole supervisor and that on December 10, 2012, petitioner arrived at her office between 11:05 a.m. and 11:32 a.m. and left her office about 12:20 p.m. (*Id*., pp. 54-57; ECF No. 8-4, PageID.389-92). Darell Wagner testified that he is petitioner's brother and that on December 10, 2012, he picked up petitioner from the parole office between 12:30 p.m. and 1:00 p.m. and drove to their mother's house, where petitioner resided. Darell Wanger could not remember the address for the apartment or the street it was on. (*Id*., pp. 62-64; ECF No. 8-4, PageID.397-99). Later, Darell Wagner drove petitioner to Darell's home in Pontiac, arriving at 2:20 p.m. (*Id*., p. 66; ECF No. 8-4, PageID.401).

Petitioner's conviction was affirmed. *See People v. Wagner*, No. 316316, 2014 WL 4930705 (Mich. Ct. App. Oct. 2, 2014); *lv. den*. 864 N.W.2d 143 (Mich. 2015); *recon. den*.

870 N.W.2d 917 (Mich. 2015); *cert. den. sub nom Wagner v. Mich.*, 136 S. Ct. 1516 (2016). Petitioner filed a post-conviction motion for relief from judgment, which was denied. *See People v. Wagner*, No. 13-000550-01-FH (Wayne Cty. Cir. Ct., Feb. 2, 2016). The Michigan appellate courts denied leave to appeal. *See People v. Wagner*, No. 333744 (Mich. Ct. App. Sept. 9, 2016); *lv. den.* 896 N.W.2d 794 (Mich. 2017).

> Petitioner seeks a writ of habeas corpus on the following grounds:
>
> I. The Petitioner conviction [sic] for witness tampering under MCR [sic] 750.122(7)(a) is against the great weight of the evidence and the verdict cannot stand.
>
> II. The prosecutor committed misconduct in his closing arguments by attacking the credibility of the defense's alibi witness and accusing him of perjuring himself and being an accessary [sic] to the alleged crime without any supporting evidence.
>
> III. Trial counsels [sic] performance fell below the standard of reasonableness, denying the Petitioner's right to the effective assistance of counsel guaranteed by the U.S. Constitution.
>
> IV. The trial court violated Defendant's state and federal constitutional rights (US Constitution, Amendment V, VI, XIV; Michigan Constitution 1963 Art 1 § 17), where the trial court gave improper jury instructions which omitted an essential element of the charged offense, relived [sic] the State of the burden of proof, and constructively modified the charge against the Defendant.
>
> V. Trial counsel's performance fell below the standard of reasonableness, violating the Defendant's constitutional right to effective assistance of counsel, where counsel failed to object to improper and erroneous jury instructions given by the court.
>
> VI. Appellate counsel, Mr. Donald R. Cook, violated the Defendants [sic] state and federal constitutional right to effective assistance of appellate counsel on direct appeal, where counsel failed to raised [sic] issues of substantial merit that were obvious from the trial records, where counsel filed a 'one day' brief which consisted of one frivolous claim, where counsel gave ambiguous and wrong information which essentially left the Defendant to

3

fend for himself; and where counsel hindered Defendant from perfecting claims on appeal by failing to give the Defendant the trial transcripts.

II. Standard of Review

28 U.S.C. § 2254(d) imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A state court's decision is "contrary to" clearly established federal law if " the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases." *Williams v. Taylor*, 529 U.S. 362, 405 (2000), or "if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from [Supreme Court] precedent." *Id.* at 406. An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because it concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id*. at 410-11. "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011)

(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  To obtain habeas relief in federal court, a state prisoner must show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103.

## III. Discussion

### A.  First Claim:  Great Weight of the Evidence

Petitioner first argues that he is entitled to habeas relief because the guilty verdict was against the great weight of the evidence.  A federal habeas court has no power to grant habeas relief on this basis.  *See Nash v. Eberlin*, 258 F. App'x 761, 764 n.4 (6th Cir. 2007) ("a manifest-weight-of-the-evidence argument is a state-law argument"); *Artis v. Collins*, 14 F. App'x 387 (6th Cir. 2001) (declining to grant certificate of appealability to habeas petitioner on claim that jury's verdict was against the manifest weight of the evidence).

To the extent that petitioner argues that the evidence was insufficient to support his conviction, he is not entitled to habeas relief.  Such a claim tests "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318 (1979).  The conviction must be upheld if the court determines that "viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original).  More recently, the Supreme Court has stated that "the only question under *Jackson* is whether [the jury's] finding was so insupportable as to fall below the threshold of bare rationality." *Coleman v. Johnson*, 566 U.S. 650, 656 (2012).

5

In the present case, the evidence was sufficient to support the jury's verdict, as the Michigan Court of Appeals found. *See Wagner*, 2014 WL 4930705, at *1-2. The elements of the offense, as recited by that court, are that the defendant

> (1) committed or attempted to commit (2) an act that did not consist of bribery, threats or intimidation, or retaliation as defined in MCL 750.122 and applicable case law, (3) but was any act or attempt that was done willfully (4) to impede, interfere with, prevent, or obstruct (5) a witness's ability (6) to attend, testify, or provide information in or for a present or future official proceeding (7) having the knowledge or the reason to know that the person subjected to the interference could be a witness at any official proceeding.

*Id.* at *2. Burston's and Carlisle's trial testimony was plainly sufficient to support the jury's finding that the prosecutor proved each element beyond a reasonable doubt: Carlisle identified petitioner as the person who appeared at her house, demanding to speak with Burston, and threatening her to "not come [to] the court" and "not talk." Burston testified that this threat frightened her and caused her not to appear as a witness at petitioner's brother's preliminary examination. Petitioner's appearance at the house, coupled with his verbal warning or threat, demonstrated his willful attempt to prevent or discourage Burston from testifying against petitioner's brother at the preliminary examination.

Petitioner also contends that there was insufficient evidence to establish his identity as the perpetrator of the offense. The Michigan Court of Appeals rejected this argument:

> On appeal, Wagner does not challenge the sufficiency of the evidence regarding the specific elements of the offense. Rather, he first argues that he was incorrectly identified as the person who visited Lutora Carlisle's house on the afternoon of December 10, 2012. Wagner asserts that Carlisle's identification of him was not credible because she only saw him outside her home for a few

6

> seconds. This argument lacks merit. Carlisle testified that she clearly saw Wagner's entire face through her front window. Carlisle remembered Wagner when she later saw him in the hallway of the courthouse on January 4, 2013. Thus, viewing the evidence in the light most favorable to the prosecution, there was sufficient evidence presented that Wagner committed the crime.

*Wagner*, 2014 WL 4930705, at *1.

Carlisle positively identified petitioner at trial as the man who appeared at her house and warned her daughter not to come to court. "[T]he testimony of a single, uncorroborated prosecuting witness or other eyewitness is generally sufficient to support a conviction." *Brown v. Davis*, 752 F.2d 1142, 1144 (6th Cir. 1985). Carlisle identification of petitioner was sufficient to support the jury's finding that petitioner was the person who appeared at her house and threatened Burston. Assessment of witness credibility is a quintessential jury function. *See Tyler v. Mitchell*, 416 F.3d 500, 505 (6th Cir. 2005); *United States v. Adamo*, 742 F.2d 927, 935 (6th Cir.1984) ("attacks on witness credibility are simply challenges to the quality of the government's evidence and not to the sufficiency of the evidence").

Petitioner further argues that the evidence was insufficient to convict him because his brother and parole officer provided him with an alibi for the crime. But as noted above, the assessment of witness credibility is for the jury, and the jury was free to reject the alibi provided by petitioner's brother and probation officer. *See United States v. Pierce*, 62 F.3d 818, 826 (6th Cir. 1995) (noting that it is the jury's function to weigh the evidence, including a defendant's alibi).

For these reasons, the Court concludes that petitioner is not entitled to habeas relief on his first claim.

**B. Second Claim:  Prosecutorial Misconduct**

Petitioner next contends that the prosecutor committed misconduct by attacking the credibility of his brother Darrell Wagner.  Petitioner points to the comments made by the prosecutor in his closing argument:

> Then we have cross-examination, and I ask [Darell] where defendant lived.  He says he lives with my mother. That's awfully strange, awfully strange that you wouldn't say in a case where you're trying to show the whereabouts of your brother, that you wouldn't say you took him home.  He didn't say I took him home, which is a natural thing to say.  I took him home. No, he said, I took him to my mother's house.  Well, it's because my mother owns the house.  Well, I'm sorry.  Many people own their house, but their children call that home when they stay there.  That's home.  He didn't say I took him home.  I took him to my mother's house.

(Tr. 4/23/13, p. 84; ECF No. 8-4, PageID.419).   Petitioner also points to the following statements made by the prosecutor in rebuttal:

> We talk about credibility of witnesses.  The defendant's witness was Darell Wagner.  It's his brother sitting in this seat.  It's his brother.
>
> \*   \*   \*
>
> You decide whether to believe these witnesses or not.  And you also have to, when you make the decision, consider the relationship between the witnesses and the relationship between the defendant and his brother, the fact that Ms. Carlisle and her daughter never saw him before in their lives.  And, of course, Darell doesn't want to admit taking the defendant over to Huntington Street. He didn't want to admit to that.  That's his brother.
>
> So when you deliberate, take all these things into consideration[.]

(*Id.*, pp. 93-94; ECF No. 8-4, PageID.428-29).

> The Michigan Court of Appeals rejected this claim as follows:
>
> The prosecution's closing argument did allude to the fact that Darell's credibility may be affected because he is Wagner's brother. The prosecution's statements, however, do not amount to misconduct as the prosecution did not imply that it had special knowledge regarding the truthfulness of Darell's testimony, nor did it suggest that defense counsel was attempting to mislead the jury. Rather, the statements were an appropriate argument that Darell was not worthy of belief. Therefore, there was no reversible error.

*Wagner*, 2014 WL 4930705, at *2 (footnote omitted).

The prosecutor merely commented on the evidence. He did not suggest that he based his comments on any personal knowledge. There was nothing improper in the quoted statements. *See Cristini v. McKee*, 526 F.3d 888, 902 (6th Cir. 2008) (noting the propriety of the prosecutor "argu[ing] from the evidence to contend that each person's testimony should not be believed"). Petitioner is not entitled to habeas relief on his second claim.

## C. Fourth Claim: Instructional Error

Petitioner contends he is entitled to habeas relief because the trial court did not instruct the jury that it had to find that he threatened or intimidated the witness. The trial court instructed the jury as follows:

> The first element that the prosecutor has to prove to you is that the defendant committed or he attempted to commit an act in order to obstruct or interfere with Binaca Burston's ability to attend, testify truthfully, or provide truthful information in or for an upcoming Preliminary Examination.
> The second element is that the act that the defendant committed or that he attempted to commit was done wilfully to impede, interfere with, prevent or obstruct Biana Burston's ability to attend or testify truthfully or provide truthful information in or for an upcoming Preliminary Examination.
> And third, that at the time he committed or attempted to commit an act that was designed to obstruct, impede, prevent or

9

> interfere with Biana Burston's ability to attend testify [sic] truthfully or provide information in or for a Preliminary Examination, the defendant knew that Biana Burston could be a witness at an official proceeding, and a Preliminary Examination is in effect an official proceeding.

(Tr. 4/23/13, pp. 104-05; ECF No. 8-4, PageID.439-40).

These instructions accurately track the elements of the offense as articulated by the Michigan Court of Appeals. *See supra* at 6. The jury was not instructed on threats and intimidation because these are not elements of the offense. Rather, the essence of the offense is that defendant committed, or attempted to commit, an act "to impede, interfere with, prevent, or obstruct" a witness's ability to attend, testify, or provide information in or for a present or future official proceeding, knowing that the person subjected to the interference could be a witness at such a proceeding. *Wagner*, 2014 WL 4930705, at *1. The instruction was proper, as the trial court correctly found in denying petitioner's motion for relief from judgment. *See* ECF No. 8-9, PageID.522. Petitioner is not entitled to habeas relief on this claim.

## D. Third, Fifth, and Six Claims: Ineffective Assistance of Counsel

In his third and fifth claims, petitioner argues that his trial counsel was ineffective. In his sixth claim, he argues that his appellate counsel was ineffective. To prevail, petitioner must show that the state court's conclusion regarding these claims was contrary to or an unreasonable application of *Strickland v. Washington*, 466 U.S. 668 (1984). *See Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009). *Strickland* established a two-prong test: petitioner must show (1) that counsel's performance was deficient, and (2) that the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687.

Petitioner argues that his trial counsel was ineffective for failing to object to the

10

prosecutorial misconduct he complains of in his second claim. As noted above, the prosecutor's comments were not improper. Counsel had not duty to object to them.

Petitioner also argues that his trial counsel should have impeached Carlisle on cross-examination with her prior description of the perpetrator in order to challenge her identification of petitioner as the perpetrator. "Courts generally entrust cross-examination techniques, like other matters of trial strategy, to the professional discretion of counsel." *Dell v. Straub*, 194 F. Supp. 2d 629, 651 (E.D. Mich. 2002). "Impeachment strategy is a matter of trial tactics, and tactical decisions [do not demonstrate] ineffective assistance of counsel simply because in retrospect better tactics may have been available." *Id*. In this case, petitioner's trial counsel did question Carlisle about her description of the suspect given to the police and whether her description could have just as easily matched her neighbor because it was so generic or common. (Tr. 4/23/13, p. 23; ECF No. 8-4, PageID.358). Counsel also succeeded in getting Carlisle to admit that she did not give the police the person's approximate age and that she described the suspect to the police four hours after the encounter. (*Id*., pp. 24-25; ECF No. 8-4, PageID.359-60). Carlisle also conceded that she did not see the suspect's entire face, thereby undermining the identification. (*Id*., p. 15; ECF No. 8-4, PageID.350). Carlisle also admitted, in response to defense counsel's questioning, that she had never seen petitioner before that date. (*Id*. p. 17; ECF No. 8-4, PageID.352). Counsel also questioned Carlisle about the duration of her encounter, suggesting it happened so quickly that she did not have time to properly identify the person. (*Id*., pp. 20-21; ECF No. 8-4, PageID.355-56).

This cross-examination demonstrates that trial counsel's performance was not ineffective under *Strickland*. Decisions regarding the how (or even whether) to cross-examine

witnesses are "stratepgic choices" counsel must make in the exercise of their professional judgment, and such choices are entitled to great deference. *Strickland*, 466 U.S. at 681.

Petitioner next contends that trial counsel was ineffective for failing to call additional alibi witnesses to corroborate the testimony of the two alibi witnesses he did call. The Michigan Court of Appeals rejected the claim as follows:

> Finally, Wagner asserts that defense counsel failed to investigate evidence that would have supported his alibi and asks this Court to consider four letters alleged to have been written by people who were purportedly willing to testify in support of his alibi. First, the record fails to demonstrate that defense counsel did not investigate these witnesses. Second, as Wagner had two alibi witnesses testify at trial, Wagner has failed to rebut the presumption that counsel's failure to call duplicative alibi witnesses at trial was not sound trial strategy.

*Wagner*, 2014 WL 4930705, at *3 (footnote omitted).

Petitioner's counsel presented his parole officer and his brother as alibi witnesses. Because any testimony from the additional proposed alibi witnesses would have been cumulative, the Michigan Court of Appeals' rejection of this claim was not an unreasonable application of *Strickland*.

Petitioner also argues that his trial counsel was ineffective for failing to object to the allegedly erroneous jury instruction. As noted above, the jury instruction in question was not erroneous, and counsel had no duty to object to it.

Petitioner next argues that his appellate counsel was ineffective for failing to raise his fourth and fifth claims on his appeal of right. This argument has no merit. Appellate counsel has no duty to "raise every nonfrivolous issue requested by the client." *Jones v. Barnes*, 463 U.S. 745, 750 (1983). Rather, appellate counsel's responsibility is to "present the client's case

in accord with counsel's professional evaluation," *id.* at 751, and this requires him/her to "winnow[] out weaker arguments on appeal and focus[] on one central issue if possible, or at most on a few key issues." *Id.* at 751-52. In the present case, appellate counsel reasonably determined not to raise the issues petitioner has identified (allegedly erroneous jury instruction and allegedly ineffective trail attorney) because these issues lacked any arguable merit.

Petitioner also argues that his appellate counsel was ineffective for failing to provide him with copies of the trial transcripts to assist him in preparing his pro se briefs that he filed on appeal in addition to the brief submitted by appellate counsel. Petitioner was represented by counsel. Petitioner he has no "constitutional right to self-representation on direct appeal from a criminal conviction," *Martinez v. Court of Appeal of Calif.*, 528 U.S. 152, 163 (2000), and he has no "constitutional entitlement to submit a pro se appellate brief on direct appeal in addition to the brief submitted by appointed counsel." *McMeans v. Brigano*, 228 F.3d 674, 684 (6th Cir. 2000). Counsel had no duty to provide petitioner with trail transcripts. Petitioner is not entitled to relief on his this claim.

**IV. Conclusion**

For the reasons stated above,

IT IS ORDERED that petitioner's application for a writ of habeas corpus is denied.

IT IS FURTHER ORDERED that no certificate of appealability shall issue because petitioner has not "made a substantial showing of the denial of a constitutional right,"

as required by 28 U.S.C. § 2253(c)(2).

IT IS FURTHER ORDERED that petitioner may not proceed on appeal in forma pauperis because any appeal in this matter would be frivolous. 28 U.S.C. § 1915(a)(3).

s/Bernard A. Friedman
Bernard A. Friedman
Dated: May 22, 2020　　　　　　　　Senior United States District Judge
Detroit, Michigan

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on May 22, 2020.

Lawrence Virgil Wagner, #360662　　　s/Johnetta M. Curry-Williams
MARQUETTE BRANCH PRISON　　　Case Manager
1960 U.S. HWY 41 SOUTH
MARQUETTE, MI 49855